**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AMADOU DIALLO, | ) | |
| | ) | |
| Plaintiff, | ) | S2 09 Cr. 858 |
| v. | ) | 12 Civ. 3310 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Hon. Marvin E. Aspen |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before us is a pro se motion, pursuant to 28 U.S.C. § 2255, "to vacate, set aside, or correct the sentence" rendered against Amadou Diallo on September 30, 2010.  28 U.S.C. § 2255(a).  (Pet. at 1, 4.)  Diallo is serving a sentence of 120 months imprisonment for his conviction on two counts in violation of 18 U.S.C. § 1951: one count of conspiring to commit Hobbs Act robberies and one count of committing a Hobbs Act robbery.  *U.S. v. Diallo*, 461 F. App'x 27, 29 (2d Cir. 2012).  The sentence also included forfeiture of $18,000.  *Id.*  Diallo now argues that his conviction should be set aside because he was denied his Sixth Amendment right to effective assistance of counsel at several points throughout the proceedings against him. (Pet. at 2–4.)  Diallo's motion is denied for the reasons discussed below.

**BACKGROUND**

In 2007, Diallo was a member of a robbery crew that targeted traffickers of untaxed cigarettes and other counterfeit goods into the New York City area.  (Reply at 3.)  Diallo's role in the crew was to target and lure potential victims to designated meeting areas.  (*Id.*)  Diallo then would direct his co-conspirators, who posed as police officers, to approach and remove the victims from their vehicles.  (*Id.* at 4.)  On at least one occasion, Diallo drove another co-

conspirator to a victim's vehicle, and Diallo took possession of such stolen merchandise by keeping it in a storage facility located in Bronx, New York. (*Id.*)

At trial, the government presented evidence of four separate robberies. (*Id.*) Three robberies took place in 2007 and were part of the charged conspiracy that took place approximately between October 31, 2007 and December 4, 2007. (*Id.*) A fourth robbery took place in February 2008 that was admissible "other act" evidence of the conspiracy. (*Id.*) The government introduced evidence that included sixteen witnesses' testimony, two of which were Diallo's co-conspirators, Ofacio Falcon and Carlos Jordan. Falcon and Jordan testified pursuant to their cooperation agreements with the government. (*Id.*) Additionally, the government presented over 80 items of physical evidence, photographs, and documents in its case against Diallo. (*Id.*)

In April 2010, a jury convicted Diallo of one count of conspiracy to commit Hobbs Act robberies and one count of committing a Hobbs Act robbery involving untaxed cigarettes, pursuant to Section 1981. (Pet. at 4; Reply at 3.) He was acquitted of a separate substantive count of a robbery involving counterfeit goods. (Reply at 3.) We sentenced Diallo to 120 months imprisonment on September 30, 2010. (Pet. at 4.) We also ordered a forfeiture of $18,000. *Diallo*, 461 F. App'x at 29. The Second Circuit Court of Appeals affirmed Diallo's conviction on February 8, 2012. *Id.* at 32. Diallo filed the present Section 2255 petition on April 26, 2012. (Pet. at 1.)

Diallo alleges that his trial counsel, Annemarie Hassett, was ineffective because she: (1) did not pursue a plea bargain on his behalf after he requested that she do so; (2) misadvised him of his sentence exposure upon conviction after trial; (3) misadvised him of the strength of the government's case; and (4) did not object to various pieces of prejudicial evidence used

against him at trial.  (Pet. at 2–3.)  Because Hassett did not pursue a plea deal on his behalf and because the government never offered one to him, Diallo alleges that he "did not have a choice but to proceed to trial."  (Resp. at 7–8.)  Diallo also asserts, however, that he was "not interested in proceeding to trial."  (*Id.* at 12.)  Diallo alternatively argues that because Hassett misadvised him of his sentence exposure and the strength of the government's case, he made the "unintelligent" decision to ultimately go to trial.  (Pet. at 12.)  Lastly, he alleges that Hassett was ineffective because she failed to make various evidentiary objections.  (*Id.* at 3.)

## EVIDENTIARY HEARING

Preliminarily, we consider whether Diallo is entitled to an evidentiary hearing under Section 2255.  Diallo argues that he was denied effective assistance of counsel and that he can prove the merits of his claims by way of an evidentiary hearing before us.  (Pet. at 20–21.)  The government, however, disputes the necessity of a hearing for a determination on the merits.  (Resp. at 34–36.)

Section 2255 calls for an evidentiary hearing to determine the merits of such claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Therefore, the filing of a Section 2255 petition does not automatically entitle a petitioner to an evidentiary hearing.  *Petrucelli v. United States*, No. 05 Civ. 9582, 2009 WL 4858081, at *13 n.1 (S.D.N.Y. Dec. 15, 2009) (citing *Newfield v. United States,* 565 F.2d 203, 207 (2d Cir. 1977)).

To warrant an evidentiary hearing, a petitioner needs to "establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'"  *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States (Armienti I)*, 234 F.3d 820, 823 (2d Cir. 2000)).  "'Objective evidence'" must accompany

a petitioner's claims. *See Ortega v. U.S.* (*Ortega I*), 09 Civ. 608, 2012 WL 2478277, at *8

(S.D.N.Y June 27, 2012) (citing *Puglisi*, 586 F.3d at 216); *see also U.S. v. Gordon*, 156 F.3d

376, 381 (2d Cir. 1998) (adopting the "objective evidence rule" for the determination that "a

petitioner would have accepted a plea offer"); *Boakye v. United States*, 09 Civ. 8217, 2010 WL

1645055, at *6 (S.D.N.Y. Apr. 22, 2010); *Petrucelli*, 2009 WL 4858081, at *13 n.1.  The

procedure used in determining whether an evidentiary hearing is warranted is analogous to

summary judgment procedure. *Puglisi*, 586 F.3d at 213.  We must review the record in a light

most favorable to Diallo when considering whether his claims, if taken as true, would establish a

claim for relief. *Id.*  If through this procedure there is a prima facie claim for relief, then we may

allow an evidentiary hearing. *Id.*  If a dispute as to material facts remains, a hearing should be

conducted to make relevant findings. *Id.*; *see also U.S. v. Aiello*, 814 F.2d. 109, 113 (2d Cir.

1987) (explaining that an evidentiary hearing is appropriate when the petitioner's motion

includes "assertions of fact that [the] petitioner is in a position to establish by competent

evidence").  Petitioner need only "identify available sources of relevant evidence." *Puglisi*,

586 F.3d at 213–14.  In addition, we "need not assume the credibility of factual

assertions . . . where the assertions are contradicted by the record in the underlying proceeding."

*Id.* at 214.

Diallo's allegations are not supported by objective evidence aside from his own "'self-

serving assertions.'"  *See Melo*, 852 F. Supp. 2d at 463 (citing *Crisci v. United States,*

108 F. App'x 25, 27–28 (2d Cir. 2004)).  His allegations, along with Hassett's declaration,

amount to a he said/she said situation between client and counsel that we find would not be

better illuminated by a full evidentiary hearing.  *See Chang*, 250 F.3d 79, 86 (2d Cir. 2001)

(explaining that the court can reasonably find that "testimony . . . would add little or nothing to

the written submissions"). While demeanor evidence would not be available to us for a credibility determination through this approach, we find that, given the record and submissions before us, we would not be swayed otherwise by a finding of credibility in Diallo's favor. *Id.* Additionally, because Diallo fails to supply evidence aside from his bare assertions in support of his claims, any credibility findings in his favor would be unpersuasive. Because we are familiar with the present case, it is within our discretion to determine that the written record before us is enough to determine the merits, as we do in detail below, without a full evidentiary hearing. *See id.*

## STANDARD OF REVIEW

We turn then to the merits of Diallo's petition. Petitioner is a pro se litigant. (Pet. at 1–2.) Accordingly, we "must construe [Diallo's] submissions 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Melo v. United States*, 825 F. Supp. 2d 457, 462 (S.D.N.Y. 2011) (citing *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999)).

Diallo argues that he received ineffective assistance of counsel at several points throughout the proceedings against him. (Pet. at 2–3.) "In order to prove ineffective assistance, [petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness;' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S. Ct 2052, 2068 (1984)); *see also Lafler v. Cooper*, ––– U.S. –––, 132 S. Ct. 1376, 1384 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."); *Missouri v. Frye*, ––– U.S. –––, 132 S. Ct. 1399, 1410 (2012) ("[W]here a defendant pleads guilty to less favorable terms and claims that ineffective assistance

of counsel caused him to miss out on a more favorable earlier plea offer," the *Strickland* inquiry "requires looking not at whether the defendant would have proceeded to trial" without the ineffective assistance "but whether he would have accepted the offer to plead pursuant to the terms earlier proposed."); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985) (applying the *Strickland* two-prong test to guilty plea challenges alleging ineffective assistance of counsel). A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Because a petitioner must meet both prongs of the *Strickland* test, it does not matter which prong is analyzed first. 466 U.S. at 697, 104 S. Ct. at 2069. Thus, we need not necessarily consider both parts of the *Strickland* test if the claim fails at least one. *Id.* The *Strickland* standard is "'highly demanding' and 'rigorous.'" *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (internal citations omitted). Additionally, we "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, . . . the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)).

## ANALYSIS

Diallo makes two separate arguments regarding Hassett's ineffectiveness concerning a possible plea deal with the government. First, Diallo alleges that he was forced to go to trial because Hassett failed to pursue a plea deal. (Resp. at 7–8.) Second, Diallo alleges that because Hassett failed to properly advise him of his potential sentence exposure and the strength of the government's case, he made the "unintelligent" decision to go to trial. (Pet. at 12.) In addition, Diallo argues that because Hassett failed to make various evidentiary objections, he received

ineffective assistance of counsel at trial. (Pet. at 3.) We address each of these arguments in turn on their merits.

### 1.    Whether Trial Counsel Was Ineffective for Failing to Pursue a Plea Bargain

Diallo alleges that Hassett was ineffective because she did not pursue a plea deal on his behalf despite his request for her to do so. (Pet. at 3.) According to Diallo, Hassett's failure to pursue a deal was unreasonable. (*Id.* at 16.) He also alleges that he was prejudiced to receive more time in prison than he would have received had he instead entered an "early guilty plea." (*Id.*) Hassett denies telling Diallo that she would pursue a plea deal on his behalf. (Hassett Decl. ¶ 5.) Rather, Hassett states that because of Diallo's "consistent representations" of his innocence to her, she did not tell Diallo that she would "contact the government to negotiate a plea on his behalf." (*Id.*) At no time during the proceedings did the government make a plea offer to Diallo. (Nawaday Decl. ¶ 3.)

"A defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer." *Pham*, 317 F.3d at 182; *see also Ortega I*, 2012 WL 2478277, at *12 (explaining that in proceedings where no plea is being offered, "it is not even clear under case law that [trial counsel] had any obligation to inform [the defendant] . . . of the benefits of a 'straight up plea' versus the risks of going to trial.")

Because no deal was ever offered, there is no objective evidence to assess the extent of any alleged prejudice towards Diallo. *See Ortega I*, 2012 WL 2478277, at *8 (citing *Puglisi*, 586 F.3d at 216); *see Boakye*, 2010 WL 1645055, at *6; *Petrucelli*, 2009 WL 4858081, at *13 n.1. Diallo cites to cases dealing with instances where trial counsel was alleged to be ineffective in regards to plea deals *actually offered* to their clients. *See*, *e.g.*, *Frye*, —— U.S. at ——, 132 S. Ct. at 1408 ("[A]s a general rule, defense counsel has the duty to communicate formal

offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."); *Lafler*, ⸻ U.S. at ⸻, 132 S. Ct. at 1387 ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."); *Boria v. Keane*, 99 F.3d 492, 497–98 (2d Cir. 1996) (discussing how trial counsel "never gave his client any advice or suggestion as to how to deal with the People's offered plea bargain"); *McClain v. United States*, No. 12 Civ. 2205, 2013 WL 1163562, at *4 & n.4 (D.N.J. Mar. 19, 2013) ("While a defense counsel is obligated to convey a plea offer and discuss with his client the consequences of accepting such offer or declining it, these obligations attach only to the offers actually made.")

Because no deal was ever offered to Diallo, such cases regarding the failure to convey a plea deal or the failure to properly advise a client in regards to an offered deal are not applicable. Even though Diallo maintains that he asked Hassett to pursue a deal on his behalf, he does not offer any objective evidence, which in this case would be in the form of a plea deal actually offered, to measure the extent to which he was prejudiced by her alleged ineffectiveness, if at all. Therefore, his initial plea negotiations argument fails the *Strickland* "prejudice" prong of the necessary two-prong test. *Strickland*, 466 U.S at 687, 104 S. Ct. at 2064.

While it is not necessary for us to do so, we also consider Diallo's argument under the "reasonableness" prong of the *Strickland* standard. 466 U.S. at 687–88, 697; 104 S. Ct. at 2064, 2069. "Even when a defendant specifically requests his counsel to pursue a plea, simply failing to do so is not ineffective assistance by counsel." *Castranovo v. United States*, No. 97 Civ. 3781, 2000 WL 222859, at *4 (S.D.N.Y. Feb. 10, 2000); *see also Brown v. Doe,* 2 F.3d 1236, 1246 (2d Cir. 1993) (explaining that counsel's decision not to initiate plea bargaining on behalf of a client may be considered reasonable strategy). Counsel is under no absolute duty to pursue a

plea deal on behalf of a client. *U.S. v. Morel*, No. 09 Civ. 8922, 2010 WL 2900318, at *4 (S.D.N.Y. July 22, 2010); *see Armienti v. United States (Armienti II)*, 313 F.3d 807, 814–15 (2d Cir. 2002); *see also U.S. v. Wells,* 394 F.3d 725, 735 (9th Cir. 2005); *U.S. v. Boone,* 62 F.3d 323, 327 (10th Cir. 1995); *Dillon v. Duckworth,* 751 F.2d 895, 901 (7th Cir. 1985); *Beans v. Black,* 757 F.2d 933, 936 (8th Cir. 1985). Where a defendant refuses to plead guilty, counsel cannot be expected to pursue plea negotiations with the government. *See Armienti II*, 313 F.3d at 814–15 (citing *U.S. v. Yost,* No. 98 CR 974, 2001 WL 536937, at *7 (S.D.N.Y. May 21, 2001)). For instance, "[i]nsistence on innocence, although not dispositive, weighs against finding that [a petitioner] would have accepted a plea deal." *Melo*, 825 F. Supp. 2d at 463 (citing *Cullen v. United States,* 194 F.3d 401, 407 (2d Cir. 1999)). Typically, we will not review such strategic decisions by an attorney. *Morel*, 2010 WL 2900318, at *4 (citing *Castranovo*, 2000 WL 222859, at *4). Finally, attorneys are not expected "to do that which is futile." *Welch v. United States*, 370 F. App'x 739, 743 (7th Cir. 2010) (citing *Armienti II*, 313 F.2d at 814–15).

Hassett advised Diallo that a cooperation agreement with the government could yield him a sentence of 21–27 months or less. (Pet. at 10.) Diallo, however, admits to rejecting the possibility of a cooperation agreement outright. (*Id.* at 11.) Diallo's outright rejection of the prospect of a cooperation agreement contradicts his insistence that he would have accepted any plea deal in order to avoid trial.

Diallo maintained his innocence throughout the proceedings. (Hassett Decl. ¶ 5; Diallo Ltr. Br. at 3, filed Feb. 16, 2010.) Diallo's insistence on innocence during the proceedings "undermines [his] bare assertion that he would have accepted a plea agreement if properly advised." *See Zandi v. United States*, 460 F. App'x 51, 53 (2d Cir. 2012) (citing *Cullen*, 194 F.3d at 407). Additionally, the pursuit of a plea deal on Diallo's behalf likely would not

have made strategic sense given his insistence on innocence.  Hassett's alleged failure to pursue the deal despite Diallo's professed innocence throughout the proceedings is therefore not unreasonable and does not meet the *Strickland* standard.

Finally, Diallo alleges that his counsel should have interpreted his proffered "Defendant's Statement of The Offense" to be an assertion of enough guilt to move her to pursue a plea deal for him.  (Resp. at 6 & Resp. Attach. 1, "Defendant's Statement.")  Diallo alleges that he "sat with [Hassett] and [gave her the] statement about his involvement in the crime."  (Resp. at 6.) We do not, however, have any indication where this undated statement came from, when it was allegedly shown to Hassett, or how it was used by her, if at all.  Moreover, Diallo denied any involvement in the crimes charged in his motions in limine brief to the court.  (Diallo Ltr. Br. at 3.)  We give more weight to Diallo's pre-trial letter brief to the court professing his innocence than his alleged statement of guilt that is undated.  (*Id.*)

Because Diallo cannot provide us with objective evidence in the form of an actual plea deal offer, we are unable to determine whether he was prejudiced for *Strickland* purposes.  As previously discussed, Diallo's first argument fails the *Strickland* two-prong test based on the prejudice requirement alone.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

**2.    Whether Trial Counsel Misadvised Petitioner as to His Sentence Exposure and the Strength of the Case against Him**

Diallo alleges in his second argument that Hassett was ineffective because she misadvised him of his sentencing exposure upon a conviction at trial and of the strength of the government's case.  (Pet. at 17–19.)  Diallo alleges that Hassett's advice regarding both points was unreasonable and unprofessional.  (*Id.*)  Based on her unreasonable advice, Diallo states that he made the "unintelligent" decision to go to trial, resulting in prejudice.  (Diallo Aff. ¶¶ 6–8.)

Preliminarily, we perceive that Diallo's second argument is inconsistent with his first. Diallo first alleged that he had no choice but to proceed to trial given that there was no plea deal offered.  (Resp. Attach. 2, Ltr. to J. Aspen at 2.)  In his second argument, however, Diallo alleges that *he* decided to proceed to trial based on Hassett's advice regarding his exposure and the strength of the case against him.  (Pet. at 16–19.)

a.      Sentencing Exposure

Where there is a "great disparity" between the "actual maximum sentencing exposure" and the exposure advice given by trial counsel, there is "sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ."  *Gordon*, 156 F.3d at 381.  Such disparity in combination with a petitioner's statement is "sufficient objective evidence . . . to support a finding of prejudice under *Strickland*."  *Id; see also Zandi*, 460 F. App'x at 52 (citing *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011)).

Diallo asserts that "he would have definitely accepted a timely guilty plea if not for trial counsel's misrepresentation during the plea stages."  (Resp. at 5.)  Because there was no formal plea deal ever offered by the government, Diallo's claim of prejudice—based on Hassett's sentence exposure advice—fails.  *See Lafler*, ⸺ U.S. at ⸺, 132 S. Ct. at 1387 ("If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here [prejudice resulting from ineffective assistance of counsel] simply does not arise."); *Frye*, ⸺ U.S. at ⸺, 132 S. Ct. at 1409–10 (discussing applicable prejudice under *Strickland* where an offered plea has lapsed or been rejected due to counsel's ineffectiveness).

We also briefly consider the reasonableness of Hassett's advice regarding Diallo's sentencing exposure both before trial and before sentencing.  Two years' difference in sentence exposure is not a gross disparity under applicable case law.  *See Gordon*, 156 F.3d at 377–78,

380 (discussing trial counsel's advice of a 120-month max sentence exposure after trial was "grossly underestimat[ed]" when compared to the actual sentence of 210 months); *U.S. v. Day*, 969 F.2d 39, 40–43 (3d Cir. 1992) (discussing trial counsel's "substandard advice" of an eleven-year sentence after trial when petitioner actually faced a twenty-two-year sentence, or greater, post trial despite a five-year sentence plea bargain offer.)  Additionally, advice regarding a possible sentence after trial is not a guarantee.  "Because [an exposure] assessment requires the attorney to give [her] client advice on matters that are contingent and, to some degree, subject to chance, an inaccurate prediction as to the sentence a defendant is likely to receive after trial should only rarely be susceptible to an ineffective assistance claim." *Colotti v. United States*, No. 11 Civ. 1402, 2012 WL 1122972, at *14 (S.D.N.Y. Apr. 4, 2012) (citing *U.S. v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989)).

The difference between Diallo's actual sentence upon conviction (120 months) and the sentence that Hassett allegedly advised him was a "reasonable possibility" (78–96 months) is two years.  (Resp. at 10; Resp. Attach. 3, Handwritten Notes.)  Diallo also alleges that Hassett told him prior to trial that an "early plea" could earn him 57 to 71 months in prison.  (Diallo Aff. ¶ 9.)  Diallo states in his petition that "the difference of pleading guilty for [a] 57–71 month sentence, to 78–97 months sentence following [a] trial conviction" was "only 21–26 months," so he "decided to take the chance of going to trial . . . ."  (Pet. at 12.)  Diallo alleges that he would have "benefited from a substantial reduction of sentence" had he pled guilty early on instead of going to trial.  (*Id.* at 17.)  Hassett denies Diallo's allegations and states that she informed him of the twenty-year statutory maximum for each of the counts he faced.  (Hassett Decl. ¶ 6.)

Diallo provided the court with evidence of Hassett's handwritten notes to him regarding the alleged advice concerning a "reasonable possibility" of exposure post-trial, which confirms

what Diallo alleged.  (Resp. Attach. 3, Handwritten Notes.)  Even if we look at the allegations in the light most favorable to Diallo, the difference between the sentence that Hassett allegedly advised him was a "reasonable possibility" (78–96 months), and the sentence Diallo ultimately received (120 months), is not grossly different so as to render such advice unreasonable.  Hassett also states that she adjusted Diallo's sentence exposure as the case progressed.  (Hassett Decl. ¶ 7.)  Thus, Hassett's alleged advice regarding Diallo's sentence exposure both before trial and before sentencing was not unreasonable under the *Strickland* standard.

      b.      Strength of the Case

Diallo also alleges that Hassett advised him that the government's case against him was "weak."  (Diallo Aff. ¶ 6.)  Hassett denies Diallo's allegation in her declaration and instead alleges that she advised him that the case against him was "strong."  (Hassett Decl. ¶ 9.)  Diallo does not provide any evidence or authority beyond his plain assertions to corroborate his allegation.  (Pet. at 18–19.)

Defendants make the "ultimate decision" on whether to plead one way or another, and trial counsel must be cautious not to "coerce a client" into the acceptance or rejection of an offered deal.  *Ortega v. United States* (*Ortega II*), No. 09 Civ. 608, 2014 WL 185785, at *16 (S.D.N.Y. Jan. 17, 2014) (quoting *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)).  A defendant has "the constitutional right to insist on going to trial rather than pleading guilty, even if the strength of the prosecution's evidence may make that insistence seem irrational." *Gonzalez v. United States*, 722 F.3d 118, 132–33 (2d Cir. 2013).

On its face, the case against Diallo was indeed strong since there were three co-conspirators preparing to testify against him at trial.  *Diallo*, 461 F. App'x at 31.  (Hassett Decl. ¶ 9.)  Given the lack of evidence to the contrary in his petition and Diallo's failure to argue his

position in response to the government's brief, we find that Hassett's advice regarding the strength of the government's case against Diallo was not unreasonable under *Strickland*.

Since we find that Hassett's advice regarding both his sentencing exposure and the strength of the government's case was not unreasonable, we cannot deem Diallo's decision to go to trial as a product of ineffective assistance of counsel.  As we previously stated, the lack of objective evidence makes a finding of prejudice based on Diallo's second argument also untenable.  Diallo's second argument thus fails the *Strickland* test.

### 3.    Whether Trial Counsel Failed To Make Necessary Evidentiary Objections

Finally, Diallo alleges that Hassett's assistance was ineffective because she failed to make various evidentiary objections, pursuant to Federal Rule of Evidence 403, both in motions in limine and during trial.  Diallo alleges that Hassett failed to object to: (1) admitted "other act" evidence; (2) flight evidence; (3) the use of Diallo's alias, "Money;" (4) prior consistent statements from testifying witnesses; and (5) attribution to Diallo of unauthenticated statements by government witnesses.  (Pet. Attach. I, Evid. Objs., at 48–50.)

Diallo argues that his trial counsel should have objected to the testimony of "prior consistent statements" from Carlos Jordan, a cooperating witness, who testified as to "planned statements to the prosecutors when he met them for the first time under the criminal cloud that raised a motive to fabricate."  (Pet. Attach. I, Evid. Objs., at 49; Reply at 27.)  Diallo also argues that Hassett should have objected to Falcon's testimony of unauthenticated statements attributed to Diallo.  (Pet. Attach. I, Evid. Objs., at 48–49.)

The government addressed these evidentiary issues in its opposition, and Diallo's failure to defend these objections in his reply brief amounts to a concession.  (Reply at 1–15.)  Consistent with the Second Circuit's instruction that ineffectiveness claims be resolved in the

district court, however, we briefly discuss Diallo's arguments concerning Hassett's alleged

failure to object to evidence.  *Diallo*, 461 F. App'x at 31 (citing *U.S. v. Salameh,* 152 F.3d 88,

161 (2d Cir. 1998)).[1]  Diallo's arguments do not hold water.

Regarding the pretrial motions in limine, trial counsel briefed and argued against the

admissibility of the "other act" evidence under Rule 403.  (Diallo Ltr. Br. at 1–2.)  With respect

to the "flight" evidence, the Second Circuit noted that Diallo's trial counsel did in fact object to

the flight evidence admitted at trial, contrary to Diallo's claims.  *Diallo*, 461 F. App'x 27 at 30.

Additionally, the Second Circuit did not find the admittance of Diallo's alleged alias,

"Money," to be error.  *Id.*  We find that Hassett's alleged failure to object to the alias was not

unreasonable or prejudicial under *Strickland*.  Diallo fails to dispute the government's argument

that at least one of the testifying witnesses only knew of Diallo by the alias "Money."  (Resp. at

1–15.)  It was not unreasonable for Hassett to refrain from objecting to the use of the alias

because the alias' admission was proper for identification purposes.  *See, e.g.*, *U.S. v. Burton*,

525 F.2d 17, 19 (2d Cir. 1975) (explaining that because "defendant's nickname was relevant to

the government's case [for identification purposes] . . . reference to the defendant by his

nickname during the presentation of the government's case, while certainly not to be

encouraged, was not prejudicial . . . ."); *U.S. v. Parker*, No. 88 Cr. 379, 1989 WL 38135, at *6

(S.D.N.Y. Mar. 7, 1989) ("It is well-established that aliases and nicknames, even if prejudicial,

are proper in an indictment where they are relevant to the government's case.") (citing *U.S. v.

Miller,* 381 F.2d 529, 536 (2d Cir. 1967)).

_____

[1] The Second Circuit previously expressed its preference that Diallo's ineffectiveness claims '"be
litigated in the first instance in the district court, the forum best suited to developing the facts
necessary to determining the adequacy of representation during an entire trial.'"  *Diallo*,
461 F. App'x at 31 (quoting *Massaro v. United States,* 538 U.S. 500, 504, 123 S. Ct. 1690, 1692
(2003)).

We turn next to Diallo's complaint about the introduction of prior consistent statements by Jordan and/or Falcon and improper questions about their cooperation agreements.  The government points out that because Diallo raised the issue of Jordan's and Falcon's credibility, including in Hassett's opening statement, questions about their motives and agreements were permissible.  Importantly, Diallo does not dispute that Hassett opened the door, in her opening statements, to this challenged line of questioning on direct examination.  Under the circumstances, we presume that it was proper for the government to examine Jordan and/or Falcon on direct regarding prior consistent statements.  *U.S. v. Certified Envtl. Servs.*, 753 F.3d 72, 86 (2d Cir. 2014) (explaining that "'[i]f the opening sufficiently implicates the credibility of a government witness . . . testimonial evidence of bolstering aspects of a cooperation agreement may be introduced for rehabilitative purposes during direct examination'") (quoting *U.S. v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988)); *see also U.S. v. Borello*, 766 F.2d 46, 56–57 (2d Cir. 1985) (discussing Second Circuit case law, including the presently applicable exception to the general rule prohibiting direct examination of a cooperator's agreement); *U.S. v. Smith*, 778 F.2d 925, 928–29 (2d Cir. 1985) ("[The] exception . . . allows a prosecutor to elicit testimony on the truth-telling portions of a cooperation agreement on direct examination if the witness's credibility has been attacked by defense counsel in opening argument.")  By the same token, it was not unreasonable for Hassett to let the questioning continue without raising an objection.

Finally, Diallo does not identify any specific statements in an alleged co-conspirator's testimony that he claims were misattributed to him.  We are therefore unable to review said statements.  In sum, Hassett's failure to object to various pieces of admitted evidence was thus not unreasonable for *Strickland* purposes.

## CONCLUSION

For the reasons discussed above, we deny Diallo's motion, pursuant to Section 2255 to vacate, set aside or correct the sentence against him.

## CERTIFICATE OF APPEALABILITY

Although Diallo did not request a Certificate of Appealability ("COA") in his petition, we *sua sponte* consider it. *Muyet v. United States*, No. 01 Civ. 9371, 2005 WL 427594, at *1 (S.D.N.Y. Feb. 22, 2005) (explaining that district courts can *sua sponte* deny a COA). A substantial showing of a denial of a constitutional right is required under 28 U.S.C. § 2253 for a COA. *Miller-el v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003); *see also Lozada v. United States,* 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds by U.S. v. Perez,* 129 F.3d 255, 259–60 (2d Cir. 1997). Diallo has not made the required substantial showing through his petition or through his response brief. Therefore, we deny Diallo's COA. It is so ordered.

_____
Marvin E. Aspen
United States District Judge


Dated:          September 10, 2014
                Chicago, Illinois